UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| SEAN RODNEY ORTH, | Case No. 3:15-cv-00131-MMD-VPC |
|---|---|
| Petitioner, | |
| v. | ORDER |
| WARDEN HDSP, *et al.*, | |
| Respondents. | |

This *pro se* habeas petition comes before the Court on respondents' motion to dismiss (ECF No. 16). Petitioner has opposed (ECF No. 29), and respondents have replied (ECF No. 32).

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner in this action challenges his 2007 convictions for trafficking in a controlled substance and ex-felon in possession of a firearm.[1] (ECF No. 15 at 2 & Exh. 47.[2]) The convictions arose out of petitioner's arrest on the night of August 21, 2006, during which police officers conducted a search of the rental vehicle he had been driving. During the search, officers located two loaded handguns in a duffel bag, a baggie of methamphetamine, and several empty baggies consistent with packaging used in the sale of narcotics. (Exh. 4.)

---

[1] Petitioner was charged with and found guilty of two counts of ex-felon in possession of a firearm. Petitioner was also charged with and found guilty of possession of a controlled substance for the purpose of sale and possession of a controlled substance, but the possession counts were merged as lesser included offenses into the offense of trafficking in a controlled substance. (*See* Exh. 46 (Tr. 40-41)).

[2] The exhibits comprising the state court record cited in this order are located at ECF Nos. 17-23.

Present during the arrest was Marla Barker, petitioner's girlfriend. (Exh. 32 (Tr. 203. 224-37).) Although Barker was subject to an outstanding warrant for failure to appear, officers did not arrest Barker on the warrant at that time. (*See* Exh. 45 (Tr. 15-17, 46 & 54).)

Earlier in the evening, petitioner and Barker had been with petitioner's friend, Eric Meyer. (*See* Exh. 32 (Tr. 224-37).) The night before petitioner's trial, Meyer and petitioner had a conversation, which was recorded by the Washoe County Jail, in which it appeared that Meyer planned to testify that the guns found in the rental vehicle were his. (*See* Exh. 45 (Tr. 27-30)). After this conversation, Reno Police Officers Silver and Lever arrested Meyer on a misdemeanor warrant and brought him back to the station for an interview. (*See* Exh. 45 (Tr. 40-43)). Meyer did not say much during the interview but did make some comments to the effect that the guns were his. (*Id.* at 26-27, 48-49, 57-58.) Lever wrote a report about the interview, and Thomas swore out an affidavit aimed at securing a seizure order for Meyer's DNA. (*Id.* at 57-58; Exh. 64 (Tr. at 169-71).)

Barker testified at trial. (Exh. 32 (Tr. 203).) Meyer, who was not disclosed until the night before trial, did not.[3] (*See* Exh. 52 at 6-9; Exh. 30 (Tr. 65-66).) At the conclusion of trial, the jury found petitioner guilty on all counts. (Exh. 35.)

Petitioner moved for a new trial. Petitioner argued, in part, that the State had failed to disclose whether Barker had received a deal or leniency in exchange for her testimony. (Exh. 37 at 4.) At a hearing on the motion, Silver, Lever and Reno Police Officer Thomas were questioned as to why they did not arrest Barker on the outstanding warrant. All testified that they had discretion whether to do so and that under the circumstances they, or other officers, felt it was best not to arrest her. (Exh. 45 (Tr. 15-17, 46 & 54).) The officers were also questioned about the Meyer interview. (*Id.* at 26-27, 48-49, 57-58.) Officer Lever testified that the conversation had been tape recorded and that he had

---

[3]The trial court found the disclosure of Meyer was untimely and therefore precluded his testimony. However, the court also stated that if it allowed Meyer to testify it would allow the introduction of DNA evidence that it had previously excluded pursuant to defense motion. (*See* Exh. 52 at 6-9; Exh. 30 (Tr. 65-66).)

written a report about it. (*Id.* at 57-58.) Officer Thomas testified that he had come to the police station during Meyer's interview in order to collect Meyer's DNA, which seizure was authorized via a telephonic order that morning. (*Id.* at 24-25.)

Petitioner's motion for new trial was denied.[4] (*Id.* at 95.) At sentencing on May 4, 2007, petitioner was adjudicated a habitual criminal and sentenced to three concurrent terms of life imprisonment with the possibility of parole after ten years. (Exhs. 46 & 47.)

Petitioner appealed, and the Nevada Supreme Court affirmed. (Exhs. 48, 52 & 56.) On appeal, petitioner argued that the district court had erred in denying his motion for a new trial because the State had withheld evidence of (1) a "deal" between police and Barker and (2) a recording of the police interview with Meyer. (Exh. 52 at 25-28.) The Nevada Supreme Court rejected this argument, finding there was no evidence of a deal between police and Barker and that "nothing in the record . . . suggest[ed] any probability that earlier disclosure of [the] interview would have led to a different result at trial." (Exh. 56 at 17-18.)

On September 15, 2009, petitioner filed a state post-conviction habeas petition. (Exhs. 58, 59 & 61.) The district court conducted an evidentiary hearing. (Exhs. 64-67.) At the hearing, petitioner's counsel presented Lever and Thomas with a Reno Police Department general order requiring arrest of individuals with outstanding failure to appear warrants. (Exh. 64 (Tr. 92-94).) Lever testified that the general order was more of a guideline than a mandate. (*Id.* at 96-97.) When asked whether he had complied with the language of the general order, Thomas responded that he did not. (*Id.* at 171-72.)

The district court denied the petition, and petitioner appealed. (Exhs. 68, 71 & 72.) On appeal, petitioner argued that the relief should have been granted based on the State's failure to disclose (1) Barker's favorable treatment, *i.e.*, the fact she was not arrested on her warrant, and (2) the Meyer interview, Lever's report of the interview, and Thomas' affidavit supporting the application for seizure of Meyer's DNA. (Exh. 72.)

---
[4]For reasons not relevant to this motion, the motion for new trial was not heard by the trial judge but instead was heard by another district judge.

3

In affirming the district court's decision, the Nevada Supreme Court found that petitioner's *Brady v. Maryland*, 373 U.S. 83 (1963) claims based on the Meyer interview and Barker's favorable treatment had been raised and rejected on direct appeal and therefore were subject to the doctrine of law of the case. (Exh. 74 at 1.) The court held that the doctrine could not be avoided by "a more detailed and precisely focused argument." (*Id.*)

Petitioner filed a motion for rehearing, arguing that the law of the case doctrine did not apply because the post-conviction appeal presented substantially different facts. (Exh. 75.) Specifically, the post-conviction appeal included the Meyer interview, which had not been included on the direct appeal. (*Id.*) While an interview had been attached to the direct appeal, it was an interview of Meyer by defense investigators — not the interview of Meyer by Officers Silver and Lever. The Nevada Supreme Court granted the motion and concluded that the law of the case doctrine was overcome with respect to the Meyer-evidence *Brady* claim because the Meyer police interview was substantially different from the Meyer defense interview. (Exh. 78.) However, the court also concluded, the claim was procedurally barred, as it could have been, but was not, raised on direct appeal, and petitioner failed to show cause and prejudice. (*See id.*)

Petitioner thereafter filed his federal habeas petition in this case. On March 24, 2016, petitioner's first amended petition — the operative petition in this action — was received and filed by the Court. (*See* ECF No. 15.) The petition asserts eleven grounds for relief:

1. Ground 1: Ineffective assistance of appellate counsel for failing to consult with petitioner on appeal;[5]

---

[5] Ground 1 also asserts that counsel was ineffective for failing to raise Grounds 2 and 7. Respondents frame Ground 1 as thus comprising three subparts: (1)(A) — failure to consult; 1(B) – failure to raise Ground 2; and 1(C) — failure to raise Ground 7. However, Grounds 2 and 7 are standalone claims of ineffective assistance of appellate counsel, and Ground 1 fails to contain any facts related to a failure to raise Grounds 2 and 7. The Court therefore reads Ground 1 as asserting only a claim of failure to consult and will considers the failures related to Grounds 2 and 7 in the context of their respective grounds. Respondents' motion to consolidate purported Ground 1(B) with Ground 2 and purported Ground 1(C) with Ground 7 will therefore be denied.

4

2. Ground 2: Ineffective assistance of appellate counsel for failing to raise a claim of insufficient evidence on appeal;

3. Ground 3: Denial of petitioner's rights to compulsory process, fair trial, due process and effective cross-examination based on the State's withholding of the Meyer interview, Lever's report about the interview, and Thomas' affidavit supporting the application for seizure of Meyer's DNA;

4. Ground 4: Prosecutorial misconduct based on the prosecutor's presentation of arguments and evidence at trial that were undermined by the exculpatory Meyer evidence;

5. Ground 5: Denial of petitioner's rights to due process and fair trial based on the State's failure to disclose the Meyer interview;

6. Ground 6: Ineffective assistance of trial counsel for failing to timely notice Meyer as a defense witness;

7. Ground 7: Ineffective assistance of trial and appellate counsel for failing to object to or raise on appeal the exclusion of exculpatory DNA evidence at trial;

8. Ground 8: Ineffective assistance of trial counsel for failing to impeach Barker's testimony on the basis of her inconsistent statements;

9. Ground 9: Ineffective assistance of trial counsel for failing to impeach Barker's testimony based on inducements and threats by police;

10. Ground 10: Denial of petitioner's rights to due process and fair trial based on the State's failure to disclose that Barker had not been arrested on an outstanding warrant and that police helped her get the warrant quashed; and

11. Ground 11: Denial of petitioner's rights to due process, fair trial, confrontation of witnesses and compulsory process related to the false testimony of the State's witnesses about the favorable treatment given to Barker.

///

Respondents assert that several of these grounds are unexhausted and two are procedurally defaulted.

## II. GOVERNING LAW

### A. Exhaustion

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest state court level of review available. *E.g.*, *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee upon which she relies and must also state the facts that entitle her to relief on that federal claim. *E.g.*, *Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g.*, *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)

### B. Procedural Default

The court cannot review a claim "if the Nevada Supreme Court denied relief on the basis of 'independent and adequate state procedural grounds.'" *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003). In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine. 501 U.S. 722, 731-32 (1991). A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996). A state procedural bar is "independent" if the state

court "explicitly invokes the procedural rule as a separate basis for its decision." *Yang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003). A state court's decision is not "independent" if the application of the state's default rule depends on the consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

### III. ANALYSIS

#### A. Exhaustion

Respondents argue that Ground 3 is partially unexhausted and that Grounds 9 and 11 are completely unexhausted. Respondents further argue that Grounds 1, 2, 5, 6, 7, 8 and 10 are partially unexhausted to the extent they assert any claims not raised before the state courts.

##### 1. Grounds 1, 5-8 and 10

Respondents argue that Grounds 1, 5-8 and 10 are unexhausted to the extent they contain anything that was not included in the petitioner's state habeas petition. As respondents do not identify what specifically may be unexhausted in these claims, the Court cannot evaluate this argument. The motion to dismiss Grounds 1, 5-8 and 10 insofar as they contain allegations not raised before the Nevada Supreme Court will therefore be denied without prejudice.

##### 2. Ground 3

In Ground 3, petitioner alleges that he was denied his rights to compulsory process, fair trial, due process, and effective cross examination in violation of the Fifth, Sixth, and Fourteenth Amendments when the State did not provide the defense with: (1) a recording of the Meyer interview; (2) Officer Lever's report about the interview; and (3) Officer Thomas' affidavit supporting an application for the seizure of Meyer's DNA. (ECF No. 15 at 18.) In their motion, respondents assert that petitioner's direct and state habeas appeals raised only a *Brady* claim — and thus a due process claim — and did not raise claims based on compulsory process and effective cross-examination. Respondents argue that Ground 3 is therefore unexhausted to the extent it asserts claims based on compulsory process and effective cross-examination. Petitioner responds that he raised

7

the claims of compulsory process and cross-examination in Ground E of his appeal of the denial of his state post-conviction petition.

Ground E of the state post-conviction appeal asserts a claim that the State's failure to disclose the above evidence violated not only *Brady*, but also petitioner's "Fifth, Sixth and Fourteenth Amendment rights to a fair trial, to effective cross-examination and to present exculpatory evidence in his favor ...." (Exh. 72 at 19, 21 & 27.) Petitioner therefore explicitly raised a claim that his right to cross-examination was violated. While Ground E did not, in so many words, assert "compulsory process," it did raise a claim that petitioner was denied the right to present exculpatory evidence, which is the gravamen of petitioner's compulsory process claim in this action. (*See* Exh. 72 at 27; ECF No. 29 at 7.) Ground E also cited the Fifth, Sixth, and Fourteenth Amendments as the source of this right, and the right to compulsory process derives from the Sixth Amendment. Accordingly, the Court concludes that Ground 3 of the petition has been sufficiently exhausted in its entirety.

### 3. Ground 9

In Ground 9, petitioner alleges that trial counsel rendered ineffective assistance by failing to impeach Barker's testimony with evidence that the police had threatened her and offered her help with finding an apartment and money to go to New York. (ECF No. 15 at 84-87.) Respondents assert that this claim is unexhausted because, although included in the post-conviction appeal brief, it was argued as part of a claim that was captioned: "The district court erred by failing to grant relief for counsel's failure to impeach Marla Barker with *prior inconsistent statements*." (Exh. 72 at 32 & 34 (emphasis added).) As inducements to testify are not the same thing as prior inconsistent statements, respondents contend that the inducements claim was not presented in a context in which it would be considered by the Nevada Supreme Court. Respondents further assert that counsel deliberately chose *not* to raise this claim in the post-conviction appeal because it would have been inconsistent with an assertion elsewhere in the brief that the State had not disclosed the inducements to trial counsel. (*See* ECF No. 32 at 7 n.1.)

8

The Court is not persuaded. The inducements referred to in Ground 9 are that Barker was offered help to go to New York and find an apartment and threatened if she did not cooperate. The opening brief does not argue that the State withheld this evidence. Rather, it asserts that the State had not disclosed that Barker was treated favorably by not being arrested on an outstanding warrant. (Exh. 72 at 35-41.) Petitioner's appeal to the Nevada Supreme Court included a claim that counsel was ineffective for failing to impeach Barker based on police threats and offers of help to move to New York. (Exh. 2 at 34.) The claim is therefore exhausted.

### 4. Ground 11

In Ground 11, petitioner alleges that he was denied his rights to due process, fair trial, confrontation of witnesses and compulsory process in violation of his Fifth, Sixth, and Fourteenth Amendment rights. Ground 11 asserts that the State's witnesses lied at the hearing on petitioner's motion for a new trial when they testified that they had discretion to not arrest Barker on her outstanding warrant. (ECF No. 15 at 94-105.) Petitioner asserts that he raised Ground 11 in Ground H of his post-conviction appeal.

While Ground H contains the factual assertion that "the police gave false testimony at the [motion for new trial] hearing about whether Barker was treated favorably," (Exh. 72 at 36), it nowhere asserts that this false testimony itself violated petitioner's constitutional rights. Further, to the extent that petitioner asserts that the withholding of the Barker impeachment information violated *Brady* because it impeded petitioner's ability to impeach Officers Thomas, Silver, and Lever, such a claim also was not raised in the post-conviction appeal. Accordingly, Ground 11 is not exhausted.

### B. Procedural Default

Respondents argue that Grounds 3 and Ground 4 are procedurally defaulted.

### 1. Ground 3

Respondents argue that Ground 3 is procedurally defaulted. Ground 3 asserts the

///

///

9

Meyer-evidence *Brady* claim petitioner raised on post-conviction appeal.[6] As noted, the Nevada Supreme Court found this claim procedurally barred pursuant to NRS § 34.810(1)(b)(2) because it could have been, but was not, raised on direct appeal. (Exh. 78.) The Ninth Circuit has held that application of this bar is an independent and adequate state ground for procedural default. *Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003). However, the Nevada Supreme Court's decision in this case was not independent of federal law, as its consideration of whether petitioner had shown cause and prejudice involved a determination as to whether petitioner had shown a *Brady* violation. *See Cooper v. Neven*, 641 F.3d 322, 332-33 (9th Cir. 2011); (Exh. 78 at 3-4). Accordingly, Ground 3 is not procedurally defaulted.

**2.    Ground 4**

In Ground 4, petitioner alleges it was prosecutorial misconduct for the prosecutor to present arguments and evidence at trial that were undermined by the Meyer evidence the State had withheld. On post-conviction appeal, the Nevada Supreme Court found that to the extent petitioner raised a claim of prosecutorial misconduct based on the State's arguments in closing that no one else could have put the duffel bag in the car and that Meyer had no connection whatsoever to the car and evidence found there, the claim was procedurally barred as it should have been raised on direct appeal. (Exh. 78 at 9.)

As noted, the Ninth Circuit has held that application of NRS § 34.810(1)(b)(2) is an independent and adequate state ground for procedural default. *Vang*, 329 F.3d at 1074. Ground 4 is therefore procedurally defaulted.

Such a default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate cause for a procedural default, the petitioner must "show that

---

[6] In their reply, respondents state that part of Ground 3 is exhausted — that part asserting a due process/*Brady* claim based on the Meyer interview, to the extent it reflects the argument raised on direct appeal. However, Ground 3 relates to the *Brady* claim that was raised on post-conviction appeal. The *Brady* claim raised on direct appeal, which respondents concede is exhausted, is Ground 5 of the amended petition.

some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Among other things, petitioner asserts that the *Brady* violation itself is cause for the default. Because such a determination is intertwined with the merits of this case, the Court will defer ruling on petitioner's cause and prejudice argument until the time of the merits determination.

**IV. PETITIONER'S OPTIONS WITH RESPECT TO HIS MIXED PETITION**

A federal court may not entertain a habeas petition unless the petitioner has exhausted available and adequate state court remedies with respect to all claims in the petition. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). A "mixed" petition containing both exhausted and unexhausted claims is subject to dismissal. *Id.* Because the Court finds that the petition is a "mixed petition," containing both exhausted and unexhausted claims, petitioner has these options:

1. He may file a motion to dismiss the unexhausted claim and proceed only on the exhausted claims;
2. He may file a motion to dismiss the petition without prejudice in order to return to state court to exhaust his unexhausted claim; or
3. He may file a motion for other relief, such as to stay and abey the exhausted claims so that he can exhaust the unexhausted claim.

*See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).

///

## V. CONCLUSION

In accordance with the foregoing, it is ordered that respondents' motion to dismiss (ECF No. 16) is granted in part and denied in part as follows:

1. Ground 11 is found to be unexhausted;
2. Grounds 3 and 9 are found to be exhausted;
3. Ground 3 is not procedurally defaulted; and
4. Ground 4 is procedurally defaulted, but the cause and prejudice analysis is deferred until the time of the merits decision.

It is further ordered that the motion to dismiss Grounds 1, 5-8 and 10 insofar as they contain allegations not raised before the Nevada Supreme is denied without prejudice.

It is further ordered that petitioner will have thirty (30) days from entry of this order within which to mail to the Clerk for filing either: (1) a motion to dismiss seeking partial dismissal only of the unexhausted claim; (2) a motion to dismiss the entire petition without prejudice in order to return to state court to exhaust the unexhausted claim; and/or (3) a motion for other appropriate relief, such as a motion for a stay and abeyance asking this Court to hold his exhausted claims in abeyance while he returns to state court to exhaust the unexhausted claim. The entire petition will be dismissed without prejudice for lack of complete exhaustion if a motion as provided for herein is not timely mailed for filing.

DATED THIS 12th day of December 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE